We will hear argument now in Modern Perfection v. Bank of America, and is it Mr. Zapirian? Yes, good morning, Your Honor. Whenever you're ready. Good morning, Your Honors. May it please the Court. My name is Nathan Zapirian. I have with me today Kelly Tucker and Lena Herbert. We represent the appellants in this matter. We're seeking, Your Honors, to overrule or reverse the motion to compel arbitration granted by the District Court in this case, and further to find that that motion to compel arbitration should be denied and that the case here should be subject to the terms of the promissory note and not the deposit agreement at issue. Four years ago, in March 2020, we were in a different world. It was the beginning of a pandemic. The government passed the CARES Act, and the Paycheck Protection Program, the PPP, was part of that act. The PPP was intended to provide relief to small businesses and to incentivize them to keep paying their workers by offering forgivable loans for payroll costs, among other things. Private lenders, including the Bank of America, were offered commissions for processing and facilitating those PPP loans. In March of 2020, Bank of America started soliciting its small business clients, including the appellants, to apply for PPP loans through the Bank of America, thinking that they were being thrown a life preserver by Bank of America and the government. Appellants applied for PPP loans ranging from tens of thousands of dollars to, in some instances, more than $100,000 to use for purposes that they believed, based on what they had been told by the Bank of America, made the loans forgivable. In 2022, however, when appellants sought forgiveness for the loans, they discovered that the Bank of America had not thrown them a life preserver, but instead had handed them an anchor. Because the loans that they received were used in accordance with representations made by Bank of America to pay 1099 workers instead of W2 workers, those loans were not forgivable. This happened despite the fact that Bank of America had indicated to appellants that they needed to supply information related to 1099 workers, and further, that they would verify the loans before they were submitted to the government. I wonder if we can just, so that's the claim, and I think we understand it, and the question is whether that claim will be arbitrated or not, right? Yes. So certainly we can jump ahead, Your Honor. I think we probably should. There's two agreements at issue here, the deposit agreement and the promissory note. They're the focus of the argument here. Both of those agreements were drafted exclusively in April 2020 and May 2020 in direct connection with their receipt of PPP loans. In contrast, the appellants entered into the deposit agreements between 2006 and 2022 not contemporaneously with receiving the PPP loans, and in fact, in connection with establishing a distinct relationship, a banking relationship with Bank of America. I just want to make sure I understand where we are in your argument. That sounds like an argument that these PPP-related claims are not within the scope of the arbitration clause in the first agreement, right? Well, so the scope versus existence question is a relevant question, obviously, Your Honor. What we've argued is that the deposit agreement has no relationship to the PPP loans at all. And if you look at the decision... Right, which would be a reason why your PPP claims do not arise under the deposit agreement for purposes of applying that arbitration clause. Exactly. Okay. Can I ask you, your 28J letter says that you're making an argument under Coinbase. What is your argument under Coinbase? So under Coinbase, Your Honor, essentially it mandates reversal of the district court's decision in circumstances such as this. In Coinbase, as here, there was an agreement with a delegation clause and a subsequent agreement that had a jurisdiction and venue clause that sent the disputes to the courts. Coinbase said that in such a situation, it is up to the court and not an arbitrator to decide the threshold issue of arbitrability. So the fact that the district court opted to send that issue to an arbitrator is directly contrary to the finding in Coinbase. You think that the holding of Coinbase is that whenever you have these two different agreements, arbitrability is for the court? Yes, Your Honor. See, I read Coinbase differently. I think, you know, how Coinbase has those four steps or four orders of questions. I think all Coinbase is saying is that if you have two agreements that in some way point to different answers to the question of who will decide arbitrability, a court has to decide which of those agreements governs as to whether arbitrability will be decided by the arbitrator or by the court. Does that sound... Yes, and I'm sorry if I misinterpreted your previous question. I think that is exactly the holding. Okay. So I think for me, it is really important to know what Coinbase argument you think you are articulating today and whether you think you also articulated that argument before today.  Well, Coinbase obviously came out after the briefing in our case. I mean, that is true, but your colleague's responsive brief sort of flagged Coinbase, said Coinbase is in front of the Supreme Court, but the plaintiffs have not exhausted that. They've never mentioned it. And it's not like in your reply brief you said, oh, no, we're making a Coinbase argument and we have exhausted it. Well, we didn't specifically reference Coinbase in the briefing, Your Honor, but we have throughout our briefing challenged the validity of the delegation clause in the deposit agreement as it pertains to the PPP loans and the claims related to those loans. It's a little bit of losing the forest for the trees. If you don't recognize the fact that throughout our briefing, we've challenged the validity of the deposit agreement. And certainly... Okay, so let's put this in the context of the four questions Coinbase says. Coinbase says there's like four levels of questions. Question one is the merits of your dispute with Bank of America. And that's the very thing we're trying to decide whether to arbitrate. Coinbase says question two is, is there an agreement to arbitrate? Like just look at an isolation that covers this claim. Question three is, does that agreement say that the arbitrator decides arbitrability? As I read the district court's opinion, it says under question two, there is an agreement. It's the deposit agreement. Does it delegate arbitrability? It does delegate arbitrability. That's what I read the district court's opinion. Then Coinbase says there can be... In cases where there are two contracts that might govern the arbitrability question, there can be a question of which contract governs the arbitrability question, which Coinbase calls category four or question four. The concern I have is that a lot of your arguments sound like category two arguments. And those arguments to me seem... I'll just say it. Pretty clearly sent to the... The district court pretty clearly determined category two arguments go to the arbitrator. But it is also true that one thing you say over and over in your brief is, the district court was wrong. The relevant agreement isn't the deposit agreement. It's the promissory note. And that starts to sound more like a Coinbase argument to me. So... But I think for purposes of making the argument I think you are allowed to make under Coinbase, we have to just ignore the deposit agreement and assume that the district court was right in saying that that says arbitrability. And now the question is, does the deposit agreement in the language of Coinbase supersede that? Does that... So could you focus sort of on that and where you preserve the argument, not that the deposit agreements don't call for arbitrability, but that the district court was wrong in viewing that as the relevant agreement for purposes of answering this question. So I agree with your analysis, Your Honor, that we are really looking at the fourth section in Coinbase, at least initially. I think once we get past that, you look more at which of the two agreements actually should control here. Although I think that is the Coinbase question, which of the two agreements should control here. Well, in terms of arbitrability, yes. So throughout our briefing, we challenge the validity of the deposit agreement. That is what I don't think you can do. You can't challenge... I think you cannot challenge the validity of the deposit agreements. You have to say, let's assume they're valid. It's just the deposit agreements don't govern arbitrability here. It's the promissory note. Where did you say that? I can't point specifically to a place where we say that in our briefing, Your Honor. What we have said is not that the deposit agreement is invalid overall. What we've said is that it doesn't apply to the PPP loan claims that are at issue here. That's a level two argument. That's an argument that these claims are not within the scope of your deposit agreement arbitration at all. Even if it has a promissory note. Right. Let me ask the question that way. Say there were no promissory note. It was just you're looking at this deposit agreement, and you just don't think that something you did over here involving loans under the PPP program arises under or is related to your deposit relationship with DOA. I mean, would your argument be much different? The argument you made in your briefs to us made before the district court, would that argument be any different if there were not promissory notes? Would you be saying basically the same thing? Yeah, I'm not sure it would be different, Your Honor. Your Honor, there still needs to be a significant relationship between the deposit agreement and the claims at issue here in order for the deposit agreement to be validly controlling. The distinction, though, Your Honor, is in looking at which party decides arbitrability, I mean, Coinbase looks at the exact situation that's present here and finds that a court has to make that decision. But Coinbase, the whole, I agree in some ways that the two agreements in Coinbase and the two agreements in this case look quite a bit alike. There's a lot of similarity. I agree. But what Coinbase doesn't say is that the court gets to decide whether Agreement 1 would call for arbitration absent Agreement 2. What Coinbase says is a court gets to decide whether Agreement 1 or Agreement 2 controls the question of arbitrability. And it seems to me that your arguments, at least in the main, I'm not sure exclusively, but in the main are about Question 1, which is not the thing that Coinbase says we can do. Your Honor, I think that the entirety of our argument has always been that the promissory note should control here. That's correct. And whether that is... Because it doesn't provide for arbitration. Because it mentions courts. Because it has a venue clause. Because it has a merger clause. For all those reasons, you think that's the contract that controls arbitration here? Right. But in order to get there, you first have to decide the question of who decides arbitrability. And the district court decided, pre-Coinbase, that the party that should decide arbitrability was an arbitrator. Let me try to ask the question this way. Assume, hypothetically, I think everything the district court said was right. The district court said everybody agrees there is an agreement to arbitrate in this case. Everybody agrees that. The agreement is in the deposit agreement. And under that arbitration agreement, the parties have agreed to arbitrate arbitrability. Your argument that these claims arise, do not arise under, and are not related to in any meaningful way the deposit agreement, that outside the scope of the deposit agreement, that will be decided by the arbitrator. Assume for a minute I think all of that is correct in as far as it goes. Do you think there is still a Coinbase argument if everything the district court said was right? Yes, Your Honor, because I think that Coinbase clarified the paradigm that we have to look at these cases through when you have two separate agreements, one of which does have a delegation clause, and one of which has a venue selection clause, and there is a conflict between the two. Okay, so assuming that everything the district court said was right, you would go to the district court and say everything you said was right, but, and then what would your argument look like then? The argument would be that since the decision, Coinbase has clarified the relevant law. Yes, but the substance.  Yes, what is the substance of your argument? And now the initial instance should be that the court and not an arbitrator should decide the arbitrability of these claims. Well, no, Coinbase doesn't say that because let's say the district court does the Coinbase analysis, the what contract controls here question, and the district court concludes that it is contract one, and again, I know you don't agree with this, but positing as Judge Harris said that everything the district court said is right, it seems to me that if the district court concludes that contract one controls arbitrability, then the district court just enters the exact same world, and the arbitrator decides arbitrability. If, if it is possible that the district court could reach that conclusion, Your Honor, and part of the, one of the errors that we assigned to the district court is that when it looked at those two agreements, it barely looked at the promissory notes at all, and instead, despite the fact that the claims are related to the promissory note, looked to the deposit agreement and the delegation clause therein for instruction rather than looking at the agreement that actually pertains to the claims at issue. Can you speak about the delegation clause specifically, and are you arguing that the delegation clause is valid? So we are not, you know, we're arguing that the delegation clause is invalid, Your Honor, because it's part of our challenge to the overall deposit agreement. We've argued through that. So you don't have a separate argument as to the validity or invalidity of the delegation clause? Well, Your Honor, we do think that to the extent that you get to, whether it clearly and unmistakably sends the issue to an arbitrator, that the language used by Bank of America was not consistent with the exacting standards set forth in Peabody. And haven't, like, all kinds of cases said that this exact language is sufficient to delegate arbitrability? Not this exact. Well, some cases have said that, have looked at this exact language, but most of the cases. I don't know that it's the exact language, Your Honor. How about we flip this around? Can you identify any case that says language like this is not sufficient to delegate arbitrability? Again, not this exact language. However, there is an important distinction between those cases and this case, and that distinction is in those cases you're talking about one agreement at issue. Here, there are two agreements at issue, and that changes the entire paradigm as Coinbase held. Judge Berner, do you have more questions? I wanted to ask about the issue of staying versus dismissing the case. Did you request a stay before the district court? We did not, Your Honor. So I think that the Fourth Circuit law and the recent Supreme Court case and the Smith v. Perizzi case does highlight the fact that a stay should be mandatory, but I do recognize that the Smith case talks specifically about there being a request to stay. I think that the logic and reasoning that is behind the FAA making the stay mandatory is still in effect here, but in response to Your Honor's question, no, we did not request a stay. Thank you very much. We'll hear now from Mr. Smallwood. Thank you. Good morning, Your Honors. Jesse Smallwood from Williams & Connolly on behalf of Appellee Bank of America. May it please the Court. Your Honors, the district court's decision to grant B of A's motion to compel arbitration was a straightforward application of settled law and undisputed facts to the arguments advanced by appellants below. The district court correctly concluded that the parties had executed an arbitration provision that contained a clause that clearly and unmistakably delegated all questions of arbitrability to the arbitrator. It also correctly concluded that all of the arguments advanced by appellants below were ones for the arbitrator and not the court to decide because they went to the issue of arbitrability and not to the issue of contract formation. Appellant's argument on the deal— Can I ask you just a question that's rattling around in my brain about the whole why are we here question? Sure. Why doesn't this promissory note have an arbitration clause? It's a good question, Your Honor. I think that because it doesn't need to have one, right? Okay, that's clearly not true. It clearly would be much better for Bank of America. It would have been better. I think looking back in retrospect, if they had to do it all over again, they would put an arbitration provision in. My working assumption is every time I sign anything with a bank ever, I'm consented to an arbitration clause. I was just surprised that this one— I guess—so let me ask, other than facetiously. I've been wondering this whole case. But, like, is there a legal—were you legally prohibited from—like, was there something in the— Not that I'm aware of, Your Honor. CARES Act that forbidden—okay. No, no. I mean, I think, to be all frank and honest with you, I have not spoken to the person who drafted the agreement, so I don't know exactly what was in their head, but this was also in the middle of the pandemic. They also—and I think that this is very important to kind of understand as a backdrop. The Bank of America required that anybody who applied for a PPP loan with Bank of America had to have a depository relationship with Bank of America. And, in fact, in the promissory note, as provision one of the promissory note, it required that, you know, the PPP recipients maintain that deposit relationship for the life of the PPP loan. In fact, it would be a breach of the agreement not to, so that they had the right to withdraw the money from the deposit agreement. There was a lot of reasons why Bank of America required a baseline depository relationship with Bank of America. I guess one hypothesis is you have a depository agreement, you've already agreed to arbitrate. Correct. You never get into a disagreement. Correct. I think that that's the rationale, Your Honor. And so going back to the issue here, which is kind of who decides kind of the issues that appellants have raised here, I thought going into this argument that their argument, like in their appellate brief, was going to be that all of their issues went to contract formation as opposed to arbitrability. But I heard kind of on appeal, kind of, or argument at kind of a concession or an admission that their arguments really do go to this issue of arbitrability. And I want to put a fine point on what I understand their arguments to be, because I think the framing of their argument is very important here as it relates to the issues that you were discussing with the Coinbase versus Susky decision, which I will get to in a second. But I think it's important to understand what I understand them to be arguing in the district court, what they argued in the district court, and what they continue to argue on appeal. Their argument is that there are two separate and unrelated agreements. You've got the deposit agreement, right, and then you've got this promissory note. They were executed at different times. According to them, they involved different subject matters, right. They note in their papers that one does not reference the other, right, that the promissory note doesn't reference the deposit agreement, the deposit agreement doesn't reference the promissory note, and they argue, and this is in reply brief pages three and four of their papers, that, and I want to get this right because I think it's important. They argue that the deposit agreements and the promissory notes are two separate and distinct agreements that do not and cannot reasonably be understood to affect one another. So you have two agreements, unrelated to one another, that don't affect one another. And their argument is simply, as I think, Judge Harris, you pointed out in your back and forth on oral argument, that they believe that their claims relate solely to the promissory note and do not relate and do not, are not governed by and are not controlled by, are not significantly related to, to use the words of American Recovery, the agreement in the deposit agreement, right, that contains the arbitration provision. So their argument, I think, is a classic arbitrability argument, right. It's does the claims that they brought fall within the scope of the arbitration provision, right. And under American Recovery, we know from both American Recovery and General Electric that that is an arbitrability dispute from this Court's decisions in both American Recovery and General Electric. The courts analyzed those issues. There wasn't a delegation clause in those cases, but they, so the court addressed the issue, but they analyzed these issues as arbitrability issues and they applied the presumption in favor of arbitrability. Can I ask you the sort of flip side of the question I asked your friend on the other side? Let's assume the deposit agreement didn't exist and the only agreement that existed was the promissory note, okay. You agree there would be absolutely no basis to send any questions to an arbitrator then, right. I agree with that. Because there's no arbitration clause in the promissory note, right. And so, and to the extent their argument is, you know, you know their argument. Their argument is the promissory note refers to courts. It has a merger clause. It says nothing, literally nothing about arbitration. Second, it refers to courts. Third, it has a merger clause, which you drafted to say like don't pay attention to anything else. This is the whole agreement. I guess maybe, let me put it this a different way. They certainly, you agree, I think have to, could have made a coinbase argument here, right? Yes, they could have, but they didn't. Okay. And if they had made a coin, you also agree the district court did not address any sort of coinbase argument here. That is correct. So you agree that if they made a coinbase argument, we would have to vacate and remand? Yes. Okay. I agree with that. But the simple fact is that they did not make a coinbase argument. And I want to be very clear as to how my understanding of coinbase works. Coinbase dealt with a very, it obviously dealt with the two contract situation in the context of a delegation clause, right? And the impact of the two contracts on the delegation clause. But, and I think that this is important and this is why I wanted to frame what I think their argument was, it dealt with a very different type of two contract argument, right? Specifically, the coinbase decision, and they framed this in their question and they answered it at the end of their opinion, dealt with the question of whether the later agreement in time supersedes the earlier agreement. In other words, and they determined that that is an issue that must be decided by the court and not the arbitrator, because it goes to, it relates to an issue of does a valid arbitration agreement exist or a delegation clause exist? Let me rephrase, I think we're on the same page in terms of that interpretation of coinbase. So this argument is, look, I agree that at time one, we made an agreement. And I agree that if all we were looking at is the time one agreement, we'd have to arbitrate here. But after that agreement, we made another agreement. And that agreement clawed back some of agreement one. And now I don't have to arbitrate anymore. That you view as, that's a coinbase argument. That is a coinbase argument. But it presupposes that agreement one calls for arbitration. Correct, correct. The argument is my claims would have fallen within, fell within agreement one. But this later agreement came around and it modified in full, it replaced in full or in part, either rendered null completely or modified in part. Imagine the promissory note said, I know it doesn't say this, but imagine the promissory note said, notwithstanding any prior agreements, any disputes between us shall be resolved in a district court in the central district of California. Correct. That would be closer to, yes. And in fact, I do want to point out, you asked whether they could have made this argument. In fact, other PPP recipients in a district court in northern district of California bringing very similar claims did bring kind of, and did raise kind of, Suskie-related arguments. This is the Happy Puppy case that we referenced in our brief. And there the district court actually considered the issue because they were operating under the predecessor to what became Coinbase versus Suskie. Right? The Ninth Circuit's version of it. And so the court addressed that issue on the motion to compel arbitration and actually rejected it and said that the later agreement is not in conflict with the earlier agreement. The venue provision in that agreement is not a mandatory and exclusive provision that mandates that all claims have to be brought in court. Rather, the provision simply says if you bring claims in court, it has to be decided, or it has to be brought in this particular jurisdiction. And that could be reconciled with the earlier agreement. They also found no other kind of, for instance, in the venue provision or in the integration clause, no other expressed language of superseding or other language. Can I ask you, like, I realize this is like five steps down, and I think you don't think we should get to this question, but let's assume for the sake of argument we think we can reach a Coinbase argument. Let's assume for the sake of argument that we would do it ourselves instead of remanding to the district court. I realize there's a lot of assumptions built in. But when one, this is something that Coinbase is like shockingly unspecific about, which is how you do a Coinbase analysis. Like, so can I ask you conceptually, let's imagine that they had made a Coinbase argument, and let's imagine that the district court, well, I mean, among other things, if we were going to remand, we should probably tell the district court something about what they're supposed to do. Is the question whether it is, like, I mean, here's an easy example. The agreements are in fatal conflict about whether to arbitrate or not. Agreement one says arbitrate, and agreement two literally says don't ever arbitrate. Fine. Coinbase tells me how to do that, I guess. But that strikes me as relatively unlikely to happen in the real world. What strikes me as much more likely to happen in the real world is a situation like this, where agreement one says arbitrate, and agreement two doesn't say arbitrate. It says some things that seem in tension with the notion you'd arbitrate, but it doesn't say don't. Is the question whether the agreements are fatally inconsistent, like, that agreement two is fatally inconsistent with agreement one? Like, what is the court supposed to do when it's trying to decide the question that Coinbase said a court is supposed to decide? I think it's a good question. I think it ultimately turns on state law, so each state could have a different answer. Okay, under Maryland law, what is the court supposed to do? But I'll get to you. So the fundamental inquiry, kind of in a supersession argument, as I understand it, is the inquiry of whether a clear intent is shown in the language of the agreement and otherwise, that the later in time agreement was intended to replace in full or in part the earlier agreement. So courts look to see whether it involves the same subject matter. For instance, like an earlier term sheet regarding, like, a phase one of a project, and then there comes around a full kind of, you know, agreement that covers all phases one, two, and three of the project. And there's language in there that's indicating that that, it's regarding the same subject matter, and there's agreement language in there that indicates that it's intended to replace kind of the agreement that only related to phase one. So they look to see whether it relates to the same subject matter, and then also... You said something at the beginning, I just want to, but you think the presumption is that agreement one is still in effect? They essentially have to rebut a presumption that agreement one is still in effect? Yes, I think that they do. I think that they would have the burden of showing that it is not still in effect. And I think that they would have the obligation to show that it relates to the same subject matter and an intent for the later agreement to replace. And just to get very briefly to your question, I think that conflict analysis is part of it, whether the language in contract two irreconcilably conflicts with the language in contract one. But I think that's only part of the analysis. You have to look for other language. Oftentimes courts look, even where there is tension, they look, if there isn't language that specifically, for instance, refers to the earlier agreement and says this agreement is intended to be supersede or replace or language to that effect, oftentimes courts won't find a supersession. So then it becomes really important that the way you conceptualize Coinbase is addressing only supersession questions. Because, and let me posit, I agree with you, when Coinbase frames the QP, they use the word supersession, and when they frame the holding at the end of the opinion, they use the word supersession. But then all throughout the opinion, there's analysis that does not seem obviously limited to supersession context and can simply be read to a how do you reconcile two agreements as opposed to just supersession. And I confess that I'm struggling with, I mean, Coinbase clearly applies to a supersession argument. I'm not sure how, if at all, Coinbase applies. It's not supersession, it's just that we made two different contracts. I'm not arguing that two supersedes one, I'm just sort of arguing that two is the relevant one, not one. So I agree that there is some loose language kind of in the middle of the opinion, or maybe it wasn't loose. But the way I read it is their entire rationale, like I view this, all their language as being ultimately directed to supersession because their entire rationale, they made very clear that the reason they found that these supersession arguments are ones for the court to decide and not an arbitrator is because, in their view, they go to the issue of validity of contract. The arbitrator can't decide whether we've agreed to arbitrate. Correct. And if you have a supersession argument, the argument is that this later agreement changes or modifies in full or in part, renders null the earlier time agreement. It's rational to conclude, as the Supreme Court did, that those types of arguments are ones that go to the court, right? Because they relate to contract formation, which has always been for the court. So I think that their reasoning and their reference to supersession, even though in other places they frame maybe the question a little bit more broadly, it ties back to the nature of the supersession argument and the nature of that being related to contract formation. If you read it more broadly, it would be in tension with the Supreme Court's long line of cases as recently as 2019 in the Henry Schein case that has made clear that arbitrability disputes, questions as to do my claims fall within the scope of the agreement, always in the face of a clear and unmistakable delegation clause, always must be for the court, or for the arbitrator to decide and not the court, even when they're wholly groundless. So to read Coinbase v. Susky more broadly, to apply to the run-of-the-mill kind of arbitrability disputes of the type that appellants are raising here, I think would essentially require you to read it to overrule kind of Henry Schein and a long line of other cases that have made very clear that that's not the case. And ‑‑ Can I ‑‑ I just want to make sure I'm following. So Judge Hyten said you could have an argument that Contract 2 supersedes Contract 1, or you could have an argument that's more like, look, there's two agreements here, and we just think the second one governs. And your answer is clearly, if it's a superseding argument, that's Coinbase. And if it's the other kind of argument, you are at least coming very close to basically deciding, is this claim that you think is governed by 2, does it actually fall within the scope of the arbitration? I think that second argument is an arbitrability argument. But the trick is not the word supersedes, right? It's displace, control over, claw back. All right. So if I'm understanding right, this whole thing then turns on the forfeiture question, and I agree that the plaintiffs don't say supersede in their briefs, but there is one place where they say that the promissory notes have clearly negated the delegation clause from the deposit agreement. Is that close enough? I think that there is a stray reference in there in one of their pages. But everywhere else they say, as I said. So if there was an argument heading that says the promissory note negates the deposit agreement, if that was an argument heading and then there was an argument under that, that would be enough. Right. Correct. But they didn't do that. It's not a magic word test. Correct. It's not a magic word test. But I think that very clearly they have made clear, and I want to say two things on this. So very clearly I think by emphasizing in their reply appellate brief their position that the later agreement has no effect, can be construed to have no effect on the earlier agreement, that's the exact opposite no matter what words you use of a supersession argument. Because a supersession argument by definition is that the later in time agreement does have an effect on the earlier agreement. So that concession I think makes very clear that they are arguing pure arbitrability, that my claims have nothing to do with the deposit agreement. I think that it's also very important to note to this forfeiture waiver issue that they have kind of waived this or conceded I think on three separate occasions that they are not making a supersession or a coinbase related argument. In the district court, while the motion to compel was being briefed, the happy puppy decision that I referenced before came out. We issued a notice of supplemental authority. They responded to that and said, and the happy puppy decision referenced and turned on an analysis of coinbase versus Suskie in the Ninth Circuit. And the plaintiffs in response to our supplemental authority said no, no, no, no, that's not the, that Ninth Circuit precedent that the other case relied on has nothing to do with our arguments here. And they framed their kind of response saying we're not arguing what was argued there. Instead we're arguing, and I'm paraphrasing now, essentially that my claims have nothing to do with the deposit agreement. Then in, as I think Judge Hyden's or Judge Harris, I can't remember which, noted kind of during appellant's oral argument, on appeal, in our appellate brief, we specifically called out the happy puppy cert decision. We argued that they had not raised that argument below or on appeal and therefore had waived it. It was four pages of our argument. They did not respond to that at all in their reply brief. They didn't cite Suskie at all, the cert petition or otherwise, in their reply brief. They didn't say here's the elements of a supersession in State law and here's how we satisfy it. They don't do, they don't even use the word supersede at all in their reply appellate brief. So they have, in our view, conceded our argument that their claims have nothing to do with a supersession argument as addressed in Suskie. And then finally, at the same time that they were submitting their reply appellate brief, they were required to identify for this court any cases currently pending before the Fourth Circuit or in the Supreme Court that relate, that raise similar issues. They did not identify Suskie. They didn't identify anything else. We actually did note the Suskie decision on appeal but said it doesn't apply to our case because it raises a different issue, the exact argument that we're raising here. So I think three times, you know, the baseball rule, three strikes, you're out. They denied that they were making a Suskie-like argument here. And instead, their entire argument is you've got these two contracts. My claims only relate to one and do not significantly relate to the other. That is an arbitrability argument. General Electric, American Recovery from this court make that clear, that it's an arbitrability argument. And Henry Schein and Gibbs and many others from this circuit make clear that where there is an arbitrability argument and there is a delegation clause that expressly delegates that to the arbitrator, that's for the arbitrator to decide. Because otherwise, if you ‑‑ I'm out of time, Your Honor, I think, so I can stop there. If you want to finish your thought. I was just going to say, to read, going back to the Suskie decision, to read kind of Suskie broader to cover these arbitrability arguments would also make no sense because it would negate the very purpose of the delegation clause. The delegation clause is expressly directed to arbitrability-type arguments. If the court were to find that you have to address essentially the arbitrability arguments before applying the delegation clause, it would be circular and it would kind of render meaningless the delegation clause. And several courts that we cited to the First Circuit's decision in the New York Life Insurance v. Fossey case make that very point, that arbitrability arguments can't be decided before applying the delegation clause because it would render those types of agreements meaningless. So with that, I'll stop. Just a minute. Judge Berner, do you have further questions? No. Thank you. Thank you, Your Honors. Thank you very much. Judge Haydens, if I may, just real briefly, I think you had previously asked whether we had raised the issue of supersession in any of our lower court briefing. We do on Joint Appendix 589 say that unlike the cases— What is that Joint Appendix 589? It's the opposition to the motion to compel arbitration, Your Honor. There we distinguish the cases cited by Bank of America and make the point that unlike here, the parties in those cases had not entered into promissory notes and the terms of these superseding agreements were not at issue. I do want to talk about the scope of Coinbase a little bit because Mr. Smallwood has adopted a very narrow view of that and I don't think it can be read narrowly. And that's based, first of all, on the language of Coinbase itself but also on a number of cases that have looked at it since its decision and have not limited it to issues solely based on supersession. Further, in our reply brief, although we don't specifically talk about the Coinbase case, we do address the issue, quoting the Johnson case, that where two contracts are separate, a lack of an arbitration clause means disputes over the agreement are not subject to arbitration. So it's an issue that we had previously raised, not specifically to the Coinbase case, but it is an issue. And again, the distinguishing factor here and what undermines Bank of America's argument with regards to Coinbase somehow undermining the Henry Schein decision is that Coinbase is limited to those instances in which there are two separate agreements. And Coinbase uses broad language in looking at those agreements. It says that the substance of the party's dispute is whether there is an agreement to arbitrate. That's been the substance of our argument from the beginning, that there is not an agreement to arbitrate in the deposit agreement that pertains to the claims related to the promissory note. And Coinbase specifically says, because the defendant there argued that their approach in that case would invite chaos, that where, as here, the parties have agreed to two contracts, one sending arbitrability disputes to arbitration and the other explicitly or implicitly sending arbitrability disputes to the courts, a court must decide which contract governs. Okay, but there was an important language in there you sort of glossed over, the part where it says you have to, for doing this analysis, assume that contract one would send this to an arbitrator. Do you agree with that? Well, there has to be a conflict. Two agreements, one of which sending the question to arbitration. That sentence you just read said that first agreement sends it to arbitration. Yes. And we are arguing that the first agreement has a delegation clause, but that it doesn't apply here. And that's really the Coinbase-based decision, is does an agreement exist that sends the disputed issues to arbitration? I think the answer is no. But you just said you think the answer is yes, that the first agreement would send it to arbitration, and now the question is whether the second agreement applies. Yeah, I'm sorry if I mispronounced, Your Honor. It's not that it sends it to arbitration. It's that there is, in fact, an agreement between the parties that is subject, that has a delegation clause that would send some claims to arbitration. Whether these claims go to arbitration under the first agreement, the arbitrator would decide that. Exactly, yes, Your Honor. Can I just, a quick follow-up. You said when you stood up that you think a broader reading of Coinbase is appropriate, both because of what the opinion says, but also you said that there are a bunch of courts applying Coinbase broadly. This is just for my benefit. Do we have those cases in front of us? We don't, Your Honor, and I don't want to overstate it. I wasn't meaning to imply that they have applied Coinbase broadly, only that they've looked at Coinbase and have not found it to apply narrowly to only supersession arguments. Can I just say, if there are cases you want us to look at, it would be good if we knew what they were. Yes. It's Baxter v. Miscavige, 2024 Westlaw 359-7120, in the Middle District of Florida, and Williams v. Experian Information Solutions, Incorporated, 2024 Westlaw 387-6171, which is from the District of Arizona. Okay. I think, I'm not exactly sure, but it's probably best if you wouldn't mind sending in a 28-J letter with those and then your colleague will also have a chance to respond. Absolutely, Your Honor. All right. Thank you very much for your time. Yes, ma'am? We are going to come down and greet counsel and then take a short break and then we will return for our last case. Thank you, Your Honor. The Honorable Court will take a brief recess.
judges: Pamela A. Harris, Toby J. Heytens, Nicole G. Berner